UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PATRICK REVORD,

                Plaintiff,        Civil Action No. 17-cv-13432
                                        Honorable Mark A. Goldsmith
v.                                       Magistrate Judge David R. Grand

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
_____/

**REPORT AND RECOMMENDATION TO GRANT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [17] AND DENY PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [15]**

Plaintiff Patrick Revord ("Revord") brings this action pursuant to 42 U.S.C. § 405(g), challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") denying his applications for Disability Insurance Benefits ("DIB") under the Social Security Act (the "Act"). Both parties have filed summary judgment motions (Docs. #15, #17), which have been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

**I.    RECOMMENDATION**

For the reasons set forth below, the Court finds that substantial evidence supports the Administrative Law Judge's ("ALJ") conclusion that Revord is not disabled under the Act. Accordingly, the Court **RECOMMENDS** that the Commissioner's Motion for Summary Judgment (**Doc. #17**) be **GRANTED**, Revord's Motion for Summary Judgment (**Doc. #15**) be **DENIED**, and that pursuant to sentence four of 42 U.S.C. § 405(g), the ALJ's decision be **AFFIRMED**.

## II. REPORT

### A. Background

Revord was 48 years old at the time of his hearing. (Tr. 43). He had completed school through the tenth grade, although he also completed one year of college courses studying electronics. (*Id.*). He has not worked since 2003, prior to his alleged onset date of July 26, 2006. (Tr. 234). Until 2003, he worked in various jobs, including as a cashier, assembly worker, and several jobs as a sewer. (Tr. 235, 276). He now alleges disability as a result of AIDS/HIV, depression, neck and back pain, disc conditions, arthritis, depression, and loose stool/diarrhea. (Tr. 234). Revord applied for both Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") on December 23, 2013, and January 10, 2014, respectively. (Tr. 208-209; 210-15). Revord's claims were initially denied, and he requested a hearing thereafter, which was held on November 17, 2015. (Tr. 40). At the hearing, Revord testified, represented by attorney Nicole L. Thompson. (Tr. 40). On August 22, 2016, the ALJ issued a decision finding Revord not disabled from the alleged onset date through the decision date. (Tr. 17). Revord appealed his decision, and the Appeals Council declined review. (Tr. 1).

The Court has thoroughly reviewed the transcript in this matter, including Revord's medical record, Function and Disability Reports, and testimony as to his conditions and resulting limitations. Instead of summarizing that information here, the Court will make references and provide citations to the transcript as necessary in its discussion of the parties' arguments.

### B. The ALJ's Application of the Disability Framework Analysis

Under the Act, DIB and SSI are available only for those who have a "disability." *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable

physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Commissioner's regulations provide that a disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.
>
> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Scheuneman v. Comm'r of Soc. Sec.*, 2011 WL 6937331, at *7 (E.D. Mich. Dec. 6, 2011) (citing 20 C.F.R. § 404.1520); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "The burden of proof is on the claimant throughout the first four steps …. If the analysis reaches the fifth step without a finding that claimant is not disabled, the burden transfers to the [defendant]." *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Following this five-step sequential analysis, the ALJ found, at Step One, Revord had not engaged in substantial gainful activity since July 26, 2006, the alleged onset date. (Tr. 23). At Step Two, the ALJ determined that Revord has the following severe impairments: human

immunodeficiency viral infection (HIV), bilateral neuropathy, bilateral carpal tunnel syndrome, lumbago, cervical spine disc herniation, and chronic obstructive pulmonary disease. (Tr. 23). The ALJ determined that Revord's "medically determinable mental impairments of anxiety and depression, considered singly and in combination, do not cause more than minimal limitation in [his] ability to perform basic mental work activities and are therefore non-severe." (Tr. 23). At Step Three, the ALJ found that Revord's impairments, whether considered alone or in combination, do not meet or medically equal a listed impairment. (Tr. 25).

The ALJ then assessed Revord's residual functional capacity ("RFC"), concluding that he is capable of performing sedentary work, with the following additional limitations:

> occasionally lift and carry weights, up to 1/3rd of the 8-hour work period, not to exceed 10 pounds of weight; can frequently lift and carry weighs, up to 2/3rds of the 8-hour work period, not to exceed 5 pounds of weight, can engage in the positions of standing and/or walking up to 2 hours during a normal 8-hour work period; has the functional abilities to engage in sitting positions for at least an overall period of 6 hours during an 8-hour work period; at claimant's election, within any one hour of the work periods, will be allowed a five-minute break at the general area of the work setting in order to alternate positions; no extremes of cold, heat, wetness, or humidity; during meal and other work period breaks, claimant would require access to a restroom toilet break in the general area of the work setting; has the functional abilities to focus on the job for at least 2 hours at a time, taking into consideration a normal 15-minute work break midway during the first 4 hours, a meal break period, as well as a 15-minute work break midway during the last 4 hours of the 8-hour work period; shall not engage in jobs that have hazards in the work setting from unprotected areas such as moving machinery, heights, ramps, ladders, and scaffolding.

(Tr. 26).

At Step Four, the ALJ found Revord is unable to perform any past relevant work. (Tr. 31). At Step Five, the ALJ found, considering Revord's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that he can perform. (*Id.*).

## C. Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotations omitted). In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007).

When reviewing the Commissioner's factual findings, the court is limited to an examination of the record and must consider the record as a whole. (*See Bass*, 499 F.3d at 512-13; *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992)). The court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council," or in this case, the ALJ. (*Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989)). There is no requirement, however, that either the ALJ or this court discuss every piece of evidence in the administrative record. (*See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal quotations omitted)). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports

the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted).

  **D.**  **Analysis**

In his motion for summary judgment, Revord argues that the ALJ erred by: (1) not finding his mental health impairments to be severe; (2) improperly determining his RFC determination; (3) improperly considering his lack of documented work history since before his alleged onset date; and (4) improperly evaluating the State of Michigan's determination of disability. (Doc. #15). Each argument is addressed below.

    *1. The ALJ Did Not Commit Reversible Error at Step Two by Failing to Find Revord's Mental Health Conditions to be "Severe" Impairments*

Revord challenges the ALJ's Step Two finding that his depression and anxiety were "non-severe impairments" which "do not cause more than minimal limitation in [his] ability to perform basic mental work activities." (Tr. 23). "[A] medically determinable impairment or combination of impairments is severe if it significantly limits an individual's physical or mental ability to do basic work activities." *Van Der Maas v. Comm'r of Soc. Sec.*, 198 F. App'x 521, 527 (6th Cir. 2006). In support of his argument that the ALJ should have found his depression and anxiety to be severe impairments, Revord states, "when seeing Dr. [Alexander] Ruthven, [he] repeatedly on psychiatric screening… related having little interest or pleasure doing things nearly every day, felt down, depressed or hopeless more than half the time, nearly every day was tired, with little energy, had trouble falling asleep or sleeping too much, occasionally felt like a failure or bad about himself and had trouble concentrating." (Doc. #15 at 25-26). While Revord failed to identify any specific records on this issue in the argument section of his brief, earlier he made clear that he was referring to notes of his appointments with Dr. Ruthven from 2014 and 2015. But a review of the notes confirms that Dr. Ruthven made no findings regarding these issues, and had merely documented

6

Revord's self-reported symptoms. (Tr. 575, 585, 590, 594, 599, 603, 608). Indeed, the same notes on which Revord relies indicate that his "Current Problem List" did not include depression or anxiety, that his "mental status exam[s]" were negative, and that the only prescription he was given was for Lipitor to address his cholesterol. (Tr. 573, 576, 583, 586, 590, 592, 595-96, 598-99, 601, 604, 606, 609).[1] The Court also notes that while the "Assessment and Plan" portion of Dr. Ruthven's records often explicitly provided for tobacco abuse counseling, he never indicated mental health counseling, therapy, or psychiatric evaluation. (*E.g.*, Tr. 603-605).

Revord's subjective indication of his symptoms is, standing alone, insufficient to show the ALJ erred in finding his depression and anxiety to be non-severe impairments. "A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, *not only by [claimant's] statement of symptoms*." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 243 n. 2 (6th Cir. 2007) (citing 20 C.F.R. § 404.1508) (emphasis added). Here, not only does Revord not point to such medical evidence, but he admits that he did not (1) seek psychiatric or psychological treatment, and (2) receive an opinion from a treating mental health professional concerning the impact of his depression or anxiety on work or daily activities.[2] (Doc. #15 at 25-26).

---

[1] It is also noteworthy that the record includes multiple instances in which Revord denied depression. For example, he denied depression, anxiety, or both in January 2014, May 2014, August 2014, and November 2014. (*See* Tr. 486, 638, 645, 661).

[2] On this point, Revord argues, "While [he] may not have followed up with counseling, [] it is often hard for anxious and depressed people to do so . . ." (Doc. #15 at 26). But without citing to any specific record evidence, Revord's argument is, at best, speculative. And, while it is true that Revord took medication for depression, this simply reflects his having been diagnosed with the condition. (Doc. #15 at 15). However, "it is well established that a diagnosis alone does not indicate the functional limitations caused by an impairment." *Richard v. Astrue*, *supra* at *5. *See also Young v. Sec'y of Health and Human Servs.*, 925 F.2d 146, 151 (6th Cir. 1990). Without further details or opinions as to how the conditions impacted Revord's life or ability to work, neither the diagnosis, nor the use of medications, establish the conditions' severity.

The hearing transcript during which Revord's mental impairments were discussed is also relevant to this issue. The ALJ asked Revord whether he had been treated psychologically or psychiatrically for any mental health conditions since his alleged onset date, and Revord responded "No."[3] (Tr. 65). Later, the ALJ had the following exchange with Revord's counsel:

> ALJ: . . . I can't find any evidence that would establish a regulatory finding of a severe mental impairment. Do you know of any evidence to the contrary?
> ATTY: Nothing from a treating psychologist or a psychiatrist. No, it would just be what he's seeing his medical doctor for as far as prescriptions he's been given through his medical doctor, which I can get some testimony from him about if you believe it would be helpful, but I don't see –

(Tr. 67).

For all of these reasons, the ALJ did not err in failing to find Revord's mental impairments to be severe at Step Two. Moreover, even if the ALJ did err in that respect, it was, at most, harmless error. Errors in failing to find an impairment "severe" at step two are generally not reversible, as long as the ALJ considered all of a claimant's impairments in the remaining steps of the determination. *Maziarz v. Sec'y of Health & Human Servs.,* 837 F.2d 240, 244 (6th Cir. 1987) ("When the ALJ considers all of a claimant's impairments in the remaining steps of the disability determination, the ALJ's failure to find additional severe impairments at step two does "not constitute reversible error."). Here, while the ALJ could have been more explicit about his consideration of Revord's mental impairments in terms of the later sequential steps of his analysis, for the reasons discussed below, the ALJ did enough to make clear that he considered those

---

[3] Revord indicated that a "Deborah Wilson" had come to his house about one year prior to the hearing to provide mental health treatment, but she stopped treating him after "about two months." (Tr. 63-65). The record does not include opinion evidence from Deborah Wilson about any treatment, and Revord's counsel failed to identify any records related to treatment by Wilson when asked by the ALJ. (*Id.*).

impairments and how they impacted the overall decision. Revord's contrary argument that "were the mental impairments noted to be severe by the ALJ, he may have properly considered them more fully in his RFC and concluded that time off task was work preclusive, or otherwise arrived at a decision in favor of [Revord]" lacks merit as it is speculative, at best. (Doc. #15 at 26).

### 2. *The ALJ's RFC Finding is Supported by Substantial Evidence*

The ALJ's assessment of Revord's RFC was as follows:

> After careful consideration of the entire record, the undersigned finds that claimant has the [RFC] to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except is able to occasionally lift and carry weights, up to 1/3rd of the 8-hour work period, not to exceed 10 pounds of weight; can frequently lift and carry weighs, up to 2/3rds of the 8-hour work period, not to exceed 5 pounds of weight, can engage in the positions of standing and/or walking up to 2 hours during a normal 8-hour work period; has the functional abilities to engage in sitting positions for at least an overall period of 6 hours during an 8-hour work period; at claimant's election, within any one hour of the work periods, will be allowed a five-minute break at the general area of the work setting in order to alternate positions; no extremes of cold, heat, wetness, or humidity; during meal and other work period breaks, claimant would require access to a restroom toilet break in the general area of the work setting; has the functional abilities to focus on the job for at least 2 hours at a time, taking into consideration a normal 15-minute work break midway during the first 4 hours, a meal break period, as well as a 15-minute work break midway during the last 4 hours of the 8-hour work period; shall not engage in jobs that have hazards in the work setting from unprotected areas such as moving machinery, heights, ramps, ladders, and scaffolding.

(Tr. 26).

The ALJ also specified, "In making this finding, [he] considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and 416.929 and SSR 96-4p." (*Id.*). Revord argues that "the RFC obviously is not an accurate portrayal of [his] limitations, and is unsupported by substantial evidence" because it did not properly consider

9

his mental health limitations and physical limitations, including fatigue and medication side effects. (Doc. #15 at 24). The Commissioner responds that Revord fails to offer evidence that would compel further limitations, and the ALJ made reasonable findings, based on the record evidence, that "met the 'minimal' articulation requirement." (Doc. #17 at 14, 15, 17). The Court agrees with the Commissioner.

First, Revord, who as the claimant, bears the burden of proving his RFC, *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 423 (6th Cir. 2008), fails to indicate what additional functional limitations should have been imposed, and provides no detail as to how any of his physical or mental impairments impact his RFC in a manner other than that described by the ALJ. This Court has deemed similarly underdeveloped arguments waived. *Berry v. Comm'r of Soc. Sec.*, No. 16-10548, 2016 WL 7664225, at *11 (E.D. Mich. Dec. 8, 2016), *report and recommendation adopted*, No. 16-10548, 2017 WL 67458 (E.D. Mich. Jan. 6 2017). Revord sets forth mainly conclusory statements, such as the "[ALJ] did not take into account side effects pertinent to this matter, such as drowsiness and fatigue" and "significant, distracting, and intense pain." (Doc. #15 at 20). But Revord does not cite record evidence that the ALJ allegedly failed to take into account, nor explain why such failure constitutes reversible error.

Moreover, Revord's argument is substantively lacking in merit as the ALJ explicitly considered his medication's side effects, and incorporated such consideration into the RFC. (Tr. 27) ("Claimant indicated he was on medications that caused side effects of nausea, tiredness, and ache"); (Tr. 29) ("Because of the side effects from claimant's medication, as well as the effects of pain, claimant cannot engage in jobs that have hazards in the work setting from unprotected areas."). The ALJ also wrote that "medical records [ ] do not support [Revord's] allegations of limitation," (Tr. 27, 30) and Revord's "statements concerning the intensity, persistence, and

limiting effects of his symptoms are not entirely consistent with the medical evidence and other evidence in the record, as indicated elsewhere in the decision." (Tr. 30). In support of this, the ALJ noted the following: on December 20, 2006 and August 8, 2007, Revord reported no significant new troubles (Tr. 27); on April 18, 2007, he stated he was "feeling relatively well," (*Id.*); although he indicated little energy and body pains on June 12, 2013, "he related to [his treating physician,] Dr. [John] Brooks on December 5, 2013, that he was doing 'relatively well' (Tr. 28); in January and February 2014, Revord described the pain at 2-3/10 in severity (Tr. 28); on August 21, 2014, Revord denied excessive drowsiness (Tr. 28). All of the aforementioned record evidence analyzed by the ALJ discredits Revord's argument that the ALJ "did not take into account" his pain, drowsiness or fatigue.

Revord also argues the ALJ's "decision does not allow for time off task outside of regularly scheduled work breaks except for one five minute break per hour in relation to his physical ailments." (Doc. #15 at 22). But, again, the ALJ's RFC determination directly contradicts this argument. The ALJ wrote that Revord "has the functional abilities to focus on the job for at least 2 hours at a time, taking into consideration a normal 15 minute break midway during the first 4 hours, a meal break period, as well as a 15 minute break during the last 4 hours…" (Tr. 26). Revord fails to show why the break frequency determined by the ALJ is inadequate, or not supported by the record evidence. Accordingly, his argument is unpersuasive.

As to Revord's mental health limitations, at Step Two the ALJ found only mild limitations in each of the relevant functional areas – activities of daily living, social functioning, and concentration, persistence, or pace – in each case, explaining why. (Tr. 24-25). For instance, the ALJ noted that Revord reported fixing his own meals, doing laundry and dishes, shopping, taking care of his personal needs, watching television, and utilizing the internet. (Tr. 24). As for social

11

functioning, the ALJ noted that Revord had lived with a friend for seven years, reported having good relationships with prior co-workers and supervisors, and was found during a consultative examination performed by Dr. Christian Barrett, Ed.D., to be friendly and pleasant, with adequate social and conversational skills. (*Id.*). Lastly, as to concentration, persistence, or pace, the ALJ found mild limitations due to Revord's ability to use a computer, handle his own finances, prepare simple meals, and due to the fact that the Mental Status Exam performed by Dr. Barrett revealed adequate contact with reality, satisfactory motivation, present insight, intelligible speech, and full orientation. (Tr. 25).

Revord never actually explains why any of these "mild" findings are not supported by substantial evidence. Instead, apparently relying principally on his own subjectively-reported limitations, he asserts, "[t]here is no substantial evidence, given the foregoing, to support a finding that [his] mental health issues produce only mild limitations." (Doc. #15 at 26). This does not adequately apprise the Court of Revord's reasoning, nor show any error by the ALJ.

The Court notes that mild limitations need not be incorporated into the ALJ's RFC assessment. *See Shamsud-Din*, No. 16-CV-11818, 2017 WL 3574694, at *6 (E.D. Mich., July 24, 2017) ("courts in this district have found that mild limitations do not require incorporation into an RFC assessment.") (internal citations omitted). Because Revord did not show that any of the ALJ's findings as to his mild mental impairments are erroneous, he has not shown that the ALJ was required to include any particular mental health limitations in the RFC.

Nonetheless, Revord argues that the ALJ "fails to evaluate how [depression] might, on its own or in combination with other determined impairments, have any impact on his residual functional capacity. It is of note that fatigue, insomnia, and problems being around people have been related to both his physical and mental issues and certainly there is some combined effect,

therefore, that should have been considered and discussed." (Doc. #15 at 21). Without citation to record evidence, or explanation as to why there is "certainly" some effect, Revord's argument is unconvincing. Treating physicians frequently found Revord's mental state to be normal, and the ALJ found those treatment records to belie even moderate mental limitations. (Tr. 24 (ALJ noting that "the clinical findings on mental status examination are inconsistent with [moderate mental limitations]"); Tr. 489, 576, 586, 590, 595, 599, 604, 609, 648, 683–84). Moreover, even though his symptoms indicated depression at certain times, on numerous other occasions, Revord denied depression. (*See, e.g.*, Tr. 486, 594, 598, 603, 608). Finally, Revord "does not provide any insight into what additional explanation he seeks or believes the ALJ should have rendered regarding [his mental impairments]." *Shamsud-Din*, *supra* at *6.

At any rate, substantial evidence supports that the ALJ appropriately considered Revord's mental impairments in his RFC analysis. First, the ALJ noted that the "[RFC] reflects the degree of limitation the [ALJ] has found in the "paragraph B" mental function analysis." (Tr. 25). The ALJ then explicitly considered that Revord alleged disability "due to…depression…being tired all the time, headaches, and loss of concentration." (Tr. 27). After mentioning Revord's symptoms and allegations, the ALJ found, "[Revord's] statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (*Id.*). The ALJ then proceeded to explain why "[t]he medical records do not support [Revord's] allegations of limitations." (*Id.*). The ALJ cited multiple medical visits in which Revord had no new complaints, and was "doing quite well." (Tr. 27-28). The ALJ also explicitly considered the opinion of Revord's treating physician, Dr. Brooks, as well as the Third Party Function Report prepared by Revord's friend, Steve Oxendine, and the State of Michigan Department of Human Services decision, which

mention Revord's mental impairments. (Tr. 27-30).[4] As to Dr. Brooks' opinion that Revord would miss more than four days of work per month, the ALJ reasonably found this opinion to be at odds with Dr. Brooks' frequent findings that Revord was doing "relatively well." (Tr. 29). For the same reasons that the ALJ discounted Revord's subjective complaints, the ALJ also reasonably discounted Oxendine's report. (Tr. 30). Finally, as discussed below, the ALJ did not err in failing to give greater weight to the State of Michigan Department of Human Services decision.

Additionally, the ALJ included language indicating that he "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." (Tr. 26). Finally, the ALJ incorporated the following limitation, which directly addresses Revord's mental abilities: "[Revord] has the functional abilities to focus on the job for at least 2 hours at a time, taking into consideration a normal 15-minute work break midway during the first 4 hours, a meal break period, as well as a 15-minute break midway during the last 4 hours of the 8-hour work period." (Tr 26).

The Court recognizes that an ALJ's failure to explain how a claimant's non-severe mental impairments affect the RFC assessment may constitute reversible error where the ALJ makes *no mention* of the claimant's mental impairment in the RFC analysis. *See*, *e.g.*, *Biehl v. Comm'r of Soc. Sec.*, No. 14-10293, 2015 WL 736366, at *21 (E.D. Mich. Feb. 20, 2015) ("[A]lthough the ALJ was arguably not required to *incorporate* mild limitations into plaintiff's RFC, she was required to *consider* those limitations in formulating plaintiff's RFC, and it is not evident from the ALJ's opinion that she did so.") (emphasis in original); *Katona v. Comm'r of Soc. Sec.*, No. 14-CV-10417, 2015 WL 871617, at *5-7 (E.D. Mich. Feb. 27, 2015). In *Katona,* the court explained

---

[4] In terms of Revord's physical impairments, the ALJ also considered the opinion of state agency medical examiner, Dr. Mohammad Sarhan, which Revord does not challenge. (Tr. 28).

14

why an ALJ's discussion of non-severe mental impairments at Step Two is, standing alone, insufficient to satisfy his obligation to consider those same impairments for the RFC: "A non-severe impairment is defined by the regulations as an impairment that does not *significantly* limit [a claimant's] physical or mental ability to do basic work activities. Notably, the definition contemplates that non-severe impairments may very well impose *some* type of limitation on basic work activities." *Katona*, *supra* at *6 (internal citations omitted) (emphasis in original).

In contrast to cases where "the ALJ's RFC assessment is silent as to plaintiff's mental limitations," or "at best unclear," *Biehl, supra* at *21, here, the ALJ mentions Revord's depression, "being tired all the time," and "loss of concentration" in his RFC analysis. (Tr. 27). While the ALJ does not explicitly address Revord's anxiety, the aforementioned analysis surrounding the combination of Revord's mental impairments is sufficient to show he considered its effects. Moreover, Revord has not pointed to any record evidence which would establish greater functional limitations due to anxiety beyond those limitations determined by the ALJ. Indeed, Revord sought no professional mental health treatment. Revord, similarly, does not argue how any further explanation about anxiety would translate to a different RFC. Any error in this respect is therefore harmless.

Lastly, Revord argues the ALJ improperly considered the opinions of Dr. Brooks and Dr. Barrett. But Revord functionally waived any argument that because Dr. Brooks was a treating physician, his opinion is entitled to controlling weight or that the ALJ should have provided a more detailed explanation of the weight given. Revord mentions that Dr. Brooks was a treating physician, and that the ALJ gave his opinion little weight (Doc. #15 at 16); but, nowhere did Revord cite or explain the treating physician rule, or whether or how it should apply here. Nevertheless, the ALJ properly considered Dr. Brooks' opinion in a detailed paragraph outlining

the reasons it was given little weight. For instance, the ALJ explained that the clinical examinations, lab results, and progress notes conflict with Dr. Brooks' opinions. (Tr. 29). Revord does not present any reason why that is incorrect or inconsistent with the record, and the Court sees no error here.

As to Dr. Barrett's opinion, Revord argues that his 2014 evaluation "was weighed in a very strange way by the ALJ." (Doc. #15 at 22). Essentially, Revord's concern is that the ALJ gave more weight to what he labels "the subjective GAF portion of [Dr. Barrett's] opinion [a score of 62, which the parties agree indicate only mild mental limitations]," than he did to some of Dr. Barrett's other findings, such as that Revord had moderate limitations with respect to his ability to interact appropriately with the public, and to understand, to remember and carry out complex instructions, and make judgments on complex work-related decisions." (Doc. #15 at 21-22). But the ALJ's handling of Dr. Barrett's opinion is supported by substantial evidence, as he explained that he gave it little weight because it was inconsistent with the evidence in the record. (Tr. 24). For instance, the ALJ noted Dr. Barrett's opinion was based on a single interaction with Revord, and was inconsistent with the rest of the record, including, in particular, the "normal" mental status findings of his treating sources. (*See supra* at 13; Tr. 24, 489, 576, 586, 590, 595, 599, 604, 609, 648, 683-84). The ALJ also noted that the limitations imposed by Dr. Barrett appear to conflict with the mild GAF score, and the lack of Revord's professional mental health treatment, and Revord has not shown that either consideration by the ALJ was improper. (Tr. 24). Finally, "[a]n ALJ can consider all evidence without directly addressing in his written decision every piece of evidence submitted by a party." *Skinner v. Comm'r of Soc. Sec.*, No. CV 15-12368, 2016 WL 7856434, at *5 (E.D. Mich. Dec. 16, 2016), *report and recommendation adopted*, No. 15-CV-12368, 2017 WL 227955 (E.D. Mich. Jan. 19, 2017). The ALJ was not required to address every

16

single aspect of Dr. Barrett's opinion, so long as he considered it in full, which he appears to have done here.

In sum, the Court agrees with the Commissioner that the ALJ's RFC determination was supported by substantial evidence.

### 3. *There Was No Error in the ALJ's Consideration of Revord's Work History*

Towards the end of the ALJ's decision, he wrote,

> Furthermore, a review of claimant's work history shows that [he] stopped working well prior to the alleged disability onset date [of July 26, 2006], which raises a question as to whether his continuing unemployment is actually due to medical impairments. Specifically, earning records do not reflect any work activity since 2002, and he described last working on January 1, 2003. Thus, he stopped worked [sic] over three years before alleging disability. As claimant stopped working well before his alleged onset date of disability, it appears that [his] purported inability to work is not necessarily due to his allegedly disabling impairments.

(Tr. 30).

Revord argues that the ALJ made an "incorrect assumption that [he] must not want to work," and there is not substantial evidence to support this finding, since the ALJ did not question Revord about this, and allegedly "other evidence on point was simply ignored." (Doc. #15 at 27). Revord does not specify what "other evidence on point" existed. More importantly, the ALJ reasonably and properly concluded from the earnings query and disability report Revord submitted that he had not worked, or received any earnings, after 2003. (Tr. 216-224; *see also* Tr. 234 (Revord reporting that he stopped working 01/01/2003)). Both the earnings query and the disability report Revord completed unquestionably support the ALJ's conclusion. Finally, Revord argues, "a remand would be appropriate to determine what, if any, effect that opinion of the ALJ had upon the outcome of the case." However, Revord cites no case law for this proposition, and again, he has shown no undue effect of the ALJ's reasoning on his overall decision.

> *4. The ALJ Committed No Reversible Error in His Analysis of the State of Michigan Disability Decision*

On January 6, 2015, the State of Michigan Department of Human Services found Revord disabled, and unable to engage in a full range of sedentary work. Revord argues that the ALJ erroneously and inadequately addressed this decision. On this issue, the ALJ wrote:

> The undersigned has also considered a State of Michigan Department of Human Services decision… [from] January 6, 2015, finding claimant would be unable to engage in a full range of sedentary work on a regular and continuing basis. The undersigned gives limited weight to this decision [ ] . Although the undersigned has considered this evidence pursuant to 20 CFR 404.1512 and 416.912 and SSR 06.03p, the undersigned notes that the issue of disability is ultimately reserved to the Commissioner [ ]. Additionally, the regulations specifically provide that a determination made by another agency, although cannot be ignored, is not binding on the [ALJ].

(Tr. 30).

The ALJ also considered the State of Michigan's decision at the hearing. (Tr. 58-63).

According to Revord, per 06-03p and 20 CFR 404.1527, 416.927, the ALJ is required to examine the state agency's decision, and articulate the reasons for disagreement. However, as the Commissioner persuasively argues, the State of Michigan decision to which Revord refers is intermediate, non-final, and provided little substantive discussion about the medical record. (Doc. #17 at 19). Although the State of Michigan decision utilized the same operative definition of "disabled" as the federal regulations, followed the same five-step procedure for disability determinations, and began at the same onset date alleged (July 26, 2006), the ALJ's decision here declining to arrive at the same conclusion is justified. First, the State of Michigan required a showing of disability for only 90 days, rather than the Act's 12-month requirement. (Tr. 729, *see also* Doc. #17 at 19). Second, the State of Michigan explained that Revord "is disabled for purposes of the SDA programs as of May 2014," which was prior to the date of the November 17, 2015 hearing before the ALJ, or the date of the ALJ's decision – August 22, 2016. (Tr. 732). The

ALJ addressed this crucial difference in Revord's hearing when he confirmed that "All [Revord's] testimony today is a result of… what his condition is today… or in recent weeks," as opposed to back in 2014 or January 2015. (Tr. 72). Third, the ALJ mentioned at the hearing that the State of Michigan's determination does not reveal precisely the records or medical evidence on which it relied, which may, or may not, be similar to the medical evidence submitted to the ALJ in the instant case. (Tr. 61-62). Finally, Revord's reliance on *Chambliss v Massanari*, 269 F.3d 520, 523 (5th Cir. 2001), is misplaced. That court held, "the relative weight to be given to [another agency's determination of disability] will vary depending on the factual circumstances of each case," *id.* at 523, and the ALJ here provided a sufficient explanation as to why the record evidence did not support Revord's alleged disability, and as to why the State of Michigan's determination was given diminished weight. There is no reason to find reversible error in this respect.

For all of the above reasons, and upon an independent review of the entire record, the Court concludes that the ALJ's decision is supported by substantial evidence.

### III. CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that the Commissioner's Motion for Summary Judgment (**Doc. #17**) be **GRANTED**, Revord's Motion for Summary Judgment (**Doc. #15**) be **DENIED**, and the ALJ's decision be **AFFIRMED**.

Dated: December 28, 2018      s/David R. Grand  
Ann Arbor, Michigan     DAVID R. GRAND  
    United States Magistrate Judge

### **REVIEW**

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for

in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on December 28, 2018.

s/Eddrey O. Butts
EDDREY O. BUTTS
Case Manager